No. 24-01278

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

GERALD NOVAK and
ADAM WENZEL,
*Plaintiffs - Appellants,*

v.

WILLIAM L. FEDERSPIEL,
in his official and personal capacities,
*Defendant - Appellee*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan – Northern Division
Honorable Thomas L. Ludington, District Court Judge

_____

## APPELLANTS' BRIEF

_____

THOMAS J. LAMBERT (P86348)
THOMAS J. LAMBERT, PLC
PO Box 144
Jamestown, MI 49427
(616) 275-2976
tlambert@tjlplc.com

PHILIP L. ELLISON (P74117)
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

## CORPORATE DISCLOSURE STATEMENT

Appellants have no parent corporation and are not a publicly held corporation owning 10% or more of stock of a party. Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................*iv*

STATEMENT IN REGARDS TO ORAL ARGUMENT...........................*x*

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW............2

INTRODUCTION...................................................................................4

FACTS / STATEMENT OF THE CASE ..................................................4

SUMMARY OF ARGUMENT .................................................................14

STANDARD OF REVIEW.......................................................................15

ARGUMENT ..........................................................................................16

    I.    Overriding Problems ..................................................16

    II.    Undisputed Affidavits ...............................................19

    III.    Plaintiffs' Motion for Summary Judgment...........................22

        A.    Temporary Taking .........................................23

        B.    Ordered Return of Firearms......................................27

            i.  Based on the Fifth Amendment............................27

            ii.  Based on Replevin / Claim and Delivery ...............28

        C.    Damages...................................................31

        D.    Dismissal Was in Error................................................32

    IV.    Defendant's Motion for Summary Judgment .......................33

        A.    Permanent Taking .......................................33

        B.    Procedural Due Process .............................................34

  C. Substantive Due Process ............................................. 41

  D. Second Amendment ...................................................... 43

  E. Fourth Amendment....................................................... 49

  F. Replevin (Claim and Delivery) .................................... 49

  G. Inverse Condemnation.................................................. 51

 V. Denial of Motion for Discovery .......................................... 52

RELIEF REQUESTED ...................................................................... 55

CERTIFICATE OF COMPLIANCE...................................................... 56

CERTIFICATE OF SERVICE.............................................................. 57

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS ....................................................... 58

# TABLE OF AUTHORITIES

### Cases

*Alleghany Corp. v. Haase*,
　896 F.2d 1046 (7th Cir. 1990) ........................................................ 22

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ................................................................ 15, 20

*Ark. Game & Fish Comm'n v. United States*,
　568 U.S. 23 (2012) .......................................................................... 31

*Bauserman v. Unemployment Ins. Agency*,
　983 N.W.2d 855 (Mich. 2022) .................................................. 51, 52

*Brewster v. Beck*,
　859 F.3d 1194 (9th Cir. 2017) ...................................................... 49

*Buckner v. Toro*,
　116 F.3d 450 (11th Cir. 1997) ...................................................... 53

*Burke v. Murray*,
　210 N.W. 321 (Mich. 1926) ............................................................ 29

*Casinelli v. United States*,
　703 F.2d 559 (6th Cir. 1982) ........................................................ 20

*Cedar Point Nursery v. Hassid*,
　141 S. Ct. 2063 (2021) ................................................................... 31

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ........................................................................ 15

*CenTra, Inc. v. Estrin*,
　538 F.3d 402 (6th Cir. 2008) ........................................................ 54

*Clark v. West*,
　23 Mich. 242 (1871) ................................................................. 29, 50

*Crabbs v. Scott,*
    786 F.3d 426 (6th Cir. 2015) ........................................................ 53

*Culley v. Marshall,*
    144 S. Ct. 1142 (2024) ................................................................. 40

*Damico v. California,*
    389 U.S. 416 (1967) ..................................................................... 18

*First English Evangelical Lutheran Church of Glendale v.*
    *Cnty. of Los Angeles*, 482 U.S. 304 (1987) ................................. 31, 34

*Fox v. Bd. of Regents,*
    134 N.W.2d 146 (Mich. 1965) ...................................................... 10

*Fox v. Van Oosterum,*
    176 F.3d 342 (6th Cir. 1999) ....................................................... 49

*Frein v. Penn. State Police,*
    47 F.4th 247 (3d Cir. 2022) ................................................ *in passim*

*Guertin v. State,*
    912 F.3d 907 (6th Cir. 2019) ....................................................... 41

*Hahn v. Star Bank,*
    190 F.3d 708 (6th Cir. 1999). ............................................ 35, 36, 40

*Henderson v. United States,*
    135 S. Ct. 1780 (2015) ................................................................. 21

*Hochman v. Bd. of Educ.,*
    534 F.2d 1094 (3d Cir. 1976) ....................................................... 18

*Horne v. Dep't of Agric.,*
    576 U.S. 351 (2015) ..................................................................... 32

*Howell v. Wexford Health Sources, Inc.,*
    987 F.3d 647 (7th Cir. 2021) ....................................................... 53

*In re Certified Questions from U.S. Dist. Ct. for E. Dist. of Mich.,*
    989 N.W.2d 812 (Mich. 2023). ..................................................... 13

*Inter City Motor Sales v. Judge of the Common Pleas Court for Detroit*,
  201 N.W.2d 378 (Mich. Ct. App. 1972) .......................................... 29

*Jenkins v. United States*,
  71 F.4th 1367 (Fed. Cir. 2023) .................................... 25, 26, 30, 33

*Johnson v. City of Saginaw*,
  980 F.3d 497 (6th Cir. 2020) .............................................. 36, 41, 42

*Kanuszewski v. MDHHS*,
  927 F.3d 396 (6th Cir. 2019) .................................................... 18, 44

*Kimball Laundry Co. v. United States*,
  338 U.S. 1 (1949) ........................................................................... 32

*Knick v. Twp. of Scott*,
  139 S. Ct. 2162 (2019) .................................................. 17, 26, 27, 28

*Leach v. Shelby Cnty. Sheriff*,
  891 F.2d 1241 (6th Cir. 1989) ..................................................... 44

*Lucas v. South Carolina Coastal Council*,
  505 U.S. 1003 (1992) .................................................................... 31

*McNeese v. Bd. of Educ. for Comm. Unit Sch. Dist.*,
  373 U.S. 668 (1963) ...................................................................... 18

*Med. Corp., Inc. v. City of Lima*,
  296 F.3d 404 (6th Cir. 2002) ........................................................ 35

*Miller v. Calhoun Cnty.*,
  408 F.3d 803 (6th Cir. 2005) ........................................................ 53

*Monroe v. Pape*
  365 U.S. 167 (1961) ........................................................ 14, 17, 18

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022) .......................................................................... 43

*Novak v. Federspiel*,
  2022 U.S. App. LEXIS 21415 (6th Cir. Aug. 2, 2022) ............. 10, 12

*O'Connor v. Eubanks,*
    83 F.4th 1018 (6th Cir. 2023) ......................................... 33

*Osborne v. Missouri Pac. R. Co.,*
    147 U.S. 248 (1893) ....................................................... 28

*Ostipow v. Federspiel,*
    824 Fed. App'x 336 (6th Cir. 2020) .......................... 7, 12

*Patsy v. Bd. of Regents of Fla.,*
    457 U.S. 496 (1982) ....................................................... 18

*Pearson v. City of Grand Blanc,*
    961 F.2d 1211 (6th Cir. 1992) ....................................... 41

*People v. Minch,*
    825 N.W.2d 560 (Mich. 2012) ....................................... 21

*People v. Washington,*
    351 N.W.2d 577 (Mich. Ct. App. 1984) ............. 8, 22, 26, 30, 42

*Peterman v. Dep't of Natural Resources,*
    521 N.W.2d 499 (Mich. 1994) ....................................... 52

*Plott v. General Motors Corp.,*
    71 F.3d 1190 (6th Cir. 1995) ......................................... 15

*Rafaeli, LLC v. Oakland Cnty.,*
    952 N.W.2d 434 (Mich. 2020) ....................................... 52

*Range v. Att'y Gen.,*
    69 F.4th 96 (3d Cir. 2023) ............................................. 46

*Schaffer v. United States,*
    232 F.2d 632 (6th Cir. 1956) ......................................... 20

*Tamulion v. State Waterways Comm'n,*
    212 N.W.2d 828 (Mich. Ct. App. 1973) ....................... 52

*Tindal v. Wesley,*
    167 U.S. 204 (1897) ....................................................... 28

*United States v. Chambers,*
192 F.3d 374 (3d Cir. 1999)...........................................8, 22, 30, 42

*United States v. Dow,*
357 U.S. 17 (1958) ........................................................................31

*United States v. Duarte,*
2024 U.S. App LEXIS 11323 (9th Cir. May 9, 2024)......................45

*United States v. Francis,*
646 F.2d 251 (6th Cir. 1981) .............................................. *in passim*

*United States v. Sineneng-Smith,*
140 S. Ct. 1575 (2020) .....................................................................4

*Vance By & Through Hammons v. United States,*
90 F.3d 1145 (6th Cir. 1996) ..........................................................54

*Vereecke v. Huron Valley Sch. Dist.,*
609 F.3d 392 (6th Cir. 2010) ..........................................................54

*White's Landing Fisheries, Inc. v. Buchholzer,*
29 F.3d 229 (6th Cir. 1994) ............................................................54

*Williams v. Baltimore & O. R. Co.,*
303 F.2d 323 (6th Cir. 1962) ..........................................................20

*Williams v. Mehra,*
186 F.3d 685 (6th Cir. 1999) ..........................................................15

*Wright v. Genesee Cnty.,*
934 N.W.2d 805 (Mich. 2019)........................................................12

*Youngstown Sheet & Tube Co. v. Sawyer,*
343 U.S. 579 (1952) .......................................................................28

COURT RULES

Fed. R. Civ. P. 56..................................................................................... 15

Mich. Ct. R. 3.105.................................................................................... 29

STATUTES

28 U.S.C. § 1291 ....................................................................................... 1

28 U.S.C. § 1331 ....................................................................................... 1

28 U.S.C. § 1343 ....................................................................................... 1

28 U.S.C. § 1367 ....................................................................................... 1


42 U.S.C. § 1983 .......................................................................... *in passim*

M.C.L. § 600.2920.................................................................................. 29

M.C.L. §600.4704............................................................................ *in passim*

M.C.L. §600.4705............................................................................ *in passim*

M.C.L. §600.4707............................................................................ *in passim*

SECONDARY SOURCES

*PA Can't Keep Guns Seized from Eric Frein's Parents*,
    WNEP 16, Aug 30, 2022, *available at*
    http://olcplc.com/s/FYq7   ............................................................. 24

WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 4th ed ........................... 29

## STATEMENT IN REGARDS TO ORAL ARGUMENT

Appellants, by counsel, requests oral argument unless the assigned panel concludes that such would not be necessary for this case.

`

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction to entertain this case pursuant to 28 U.S.C. § 1331 and § 1343 as this case involves federal questions under the United States Constitution and federal civil rights under 42 U.S.C. § 1983. The District Court also had supplemental jurisdiction, which it exercised, for the state-law claim(s) as well. See 28 U.S.C. § 1367.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's final judgment and all prior orders and decisions as a final judgment was entered on March 29, 2024. **Judgment, RE 98, PageID #2970**. Plaintiffs/Appellants timely appealed to this Court later that same day. **Notice of Appeal, RE 99, PageID #2971.**

`

## STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW

I.      Given the uncontested declarations by Plaintiffs, did the District Court commit error when repeatedly asserting there is a question of fact regarding ownership of the fourteen firearms?

      **Appellants answer:**      **Yes.**

II.     Did the District Court commit error when believing any private citizen could initiate a forfeiture proceeding under Michigan's *Omnibus Forfeiture Act*?

      **Appellants answer:**      **Yes.**

III.    Did the District Court commit error in not granting an order requiring the return of the fourteen firearms and finding that an amount of "just compensation" is due as a temporary taking under the Fifth Amendment with the dollar figure to be determined at trial?

      **Appellants answer:**      **Yes.**

IV.     Except for the request for damages against Sheriff Federspiel in his personal capacity on the Second and Fifth Amendment claims, did the District Court commit error when dismissing the Section 1983 federal civil rights claims premised on the Fifth Amendment (takings); Fourteenth Amendment (procedural and substantive due process); the Second Amendment; and the Fourth Amendment?

      **Appellants answer:**      **Yes but the Fourth Amendment claim is raised for preservation purposes only.**

V.      Did the District Court commit error when dismissing the replevin (claim-and-delivery) claim?

      **Appellants answer:**      **Yes.**

`

VI.   Did the District Court commit error when dismissing the inverse condemnation claim?

**Appellants answer:**      **Yes.**

VII.  Did the District Court commit error denying the opportunity for discovery?

**Appellants answer:**      **Yes.**

`

## INTRODUCTION

Innocent owners Plaintiffs Gerald Novak and Adam Wenzel simply want their fourteen firearms returned which were supposed to only be taken from them temporarily. Since the need for their seizure entered, the Sheriff repeatedly demurred when restoration has been demanded. The lower federal District Court erroneously rejected the various constitution protections that remedy such legal intransience, so this appeal now follows. Reversal is both requested and warranted.

## FACTS / STATEMENT OF THE CASE

There is a deer-hunting cabin[1] that is owned by Plaintiffs Gerald Novak in Merrill, Michigan (as he lives elsewhere) but was resided in by a shirt-tail relative, Benjamin Heinrich, and his child's mother "H."

On October 23, 2017, while watching television in the garage with a friend and becoming frustrated with observing, for a second time, the indifference of his crying daughter by "H," the daughter's mother, Heinrich went to the bedroom after a verbal exchange with H, opened an

---

[1] For reasons that are unclear, the District Court sua sponte researched the legal history of the cabin's ownership. Why it did is unclear and likely violates the party presentation doctrine. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). But it an entirely a red-herring as it is not a material fact in this case.

`

unlocked gun cabinet, pulled out a New England .410 shotgun (that was not his), and forced H to leave by gunpoint. **Police Report, RE 13-2, PageID # 1364-1365.** H fled and Heinrich then put the firearm back in the cabinet. *Id.* **at PageID # 1365.** Saginaw County sheriff's deputies responded and designated the circumstances as a "lover's quarrel." *Id.* **at PageID # 1363.** The gun was never fired and Heinrich, likely being mentally exhausted and frustrated as new parents often are,[2] explained he did not have any intentions of hurting H, but just wanted her to leave. *Id.* **at PageID # 1365.**  The deputies arrested Heinrich and seized the firearm, a New England .410, he had leveled at his partner. Deputies also took possession of[3] thirteen other firearms they found in the cabin for the alleged purpose of "safe keeping." *Id.*

Critically, Heinrich never owed any of the firearms. Between Novak and Wenzel, they own their respective firearms. **Novak Decl., RE 13-6, PageID #1379; Wenzel Decl., RE 13-7, PageID #1381.** Plaintiffs

---

[2] This is not saying that brandishing a shotgun and demanding the mother leave under threat is a warranted or proper reaction, but it is a fact that occurred within a context of what are likely two frustrated (and likely extremely tired) parents with a child repeatedly crying.

[3] There is a legal curiosity as to whether any of the firearms were actually "seized" as that term means under the OFA or merely taken into possession by Defendant through his deputies.

`

Novak and Wenzel are innocent owners; they have no criminal records whatsoever. **Novak iChat Report, RE 67-6, PageID# 2506; Wenzel iChat Report, RE 67-7, PageID# 2507**. Unremarkably for hunters with a cabin, their recreational firearms were being "merely stored" at the hunting cabin. **Novak Decl., RE 13-6, PageID #1379.** Undisputedly, Novak and Wenzel did not authorize, condone, bless, have any part of, or contribute in any way to the events or interactions between Heinrich and his partner. *Id.*; see also **Heinrich Affidavit, RE 32-12, PageID # 1974.** In other words, they are innocent owners.

At the time of taking possession of the firearms, a legal 28-day clock started. "Within 28 days after personal property is seized," the Sheriff needed to "give notice of the seizure of the property and the intent to forfeit and dispose of the property." M.C.L. §600.4704(1). This had to be done by direct delivery or certified mail. M.C.L. §600.4704(2). However, "[i]f the name and address of the person are not reasonably ascertainable or delivery of the notice cannot reasonably be accomplished, the notice shall be published in a newspaper of general circulation in the county in which the personal property was seized or the real property is located for 10 successive publishing days." M.C.L. §600.4704(2). Problematically for

`

everyone, the Sheriff accomplished *none* of these requirements.[4] Had he (and his government agency[5]) properly complied with M.C.L. § 600.4704, then "[w]ithin 28 days after receipt of the notice," each could have then "file[d] a claim [] expressing his or her interest in the property and any objection to forfeiture." M.C.L. § 600.4707(2). But that opportunity was never provided.

In the months that followed the lack of any notice whatsoever, Heinrich eventually pled guilty to and was sentenced to probation for misdemeanor domestic violence. ***People v. Heinrich* Crim Ct. Record, RE 13-4, PageID # 1373-1375**. He has since complied with all the terms of his probation and has been fully discharged from the state criminal justice system as of January 2019. At that point, the Sheriff has *another* obligation to provide notice. "Within 28 days after the conviction of a person of a crime," the Sheriff "shall give notice of the seizure of the property… and the intent to begin proceedings to forfeit and dispose of

---

[4] The Sheriff conceded below his legal ability to even try to seek any form of forfeiture has now totally lapsed by his failure to act in compliance with state law. **Df. Resp. Br., RE 57, PageID # 2345.**

[5] Having sued Sheriff Federspiel in his official capacity means suing Saginaw County. *Ostipow v. Federspiel*, 824 Fed. App'x 336, 340 (6th Cir. 2020) ("When an officer" like Sheriff Federspiel "is sued in his official capacity, the law treats that suit as an action against Saginaw County.").

`

the property." M.C.L. § 600.4707(1). The same use of direct delivery, certified mail, and newspaper publication was required. *Id.* And like before, the Sheriff totally failed to accomplish this requirement in any way. This resulted in *no one* receiving any notice at any point—whether by delivery, mail, or publication.

As time went on, Plaintiffs Novak and Wenzel questioned why they were not getting their firearms back, yet had heard nothing from the Sheriff's office. After all, it is well established that once a criminal prosecution is over, non-forfeited private property must be returned to the rightful owners. *United States v. Francis*, 646 F.2d 251, 262 (6th Cir. 1981); *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999); *People v. Washington*, 351 N.W.2d 577, 580 (Mich. Ct. App. 1984); *Frein v. Penn. State Police*, 47 F.4th 247, 253 (3d Cir. 2022). And that is the rub — Defendant intentionally demurred.

With the criminal matter fully closed by discharge from probation, Plaintiffs began to actively seek for the return of their firearms (even though operating blind given that no Section 4704/4707 notices ever issued). In February 2019, Detective Kruszka confirmed Plaintiffs' desire for the return of their private property, as documented in an email dated

`

February 22. **Emails, RE 13-5, PageID # 1376-1378**. The response, on behalf of Defendant, was "too bad." ***Id*. at PageID # 1377.** According to the email, the policy of the office was that "the longer we keep the guns, the better." ***Id*.** No attempts were ever made by Defendant to locate who owned these firearms or to effectuate their return. Defendant and his counsel offered nothing as part of this case to establish ownership rests with someone else.

Then the real problem in this case commenced – a legal standoff. Plaintiffs aver—*and it has gone unrebutted by Defendant*—that they own[6] their respective firearms. **Novak Decl., RE 13-6, PageID #1379; Wenzel Decl., RE 13-7, PageID #1381.** And unquestionably, the Sheriff has current possession of the firearms, **Property Room Records, RE**

---

[6] It is true there are no existing ownership papers from the dates of their original purchases or receiving the same but such makes sense for long-owned guns and heirlooms. But it is even simpler than that. The undersigned has a mini-refrigerator in his legal office. There is no longer any paperwork or a receipt from the time of purchase more than a decade ago. The undersigned is still its owner despite a lack of original papers. So, if the Sheriff takes custody of the refrigerator, it is still the undersigned's property even if lacking "paperwork" of when, where, or for how much it was originally purchased. Any assertion of "no paper, no ownership" clearly fails; a lack of proof of original purchase is not a legal requirement.   But affidavits of ownership exist here and those declarations have gone totally unrebutted.

`

**13-8, PageID # 1383-1396**, yet has no ownership interest of any sort in any of these firearms because the firearms have never been sought to be or were forfeited in Defendant's favor. At the same, the Sheriff just flat will not return the firearms either.

"And so the lawsuits began." *Novak v. Federspiel*, 2022 U.S. App. LEXIS 21415 (6th Cir. Aug. 2, 2022). In 2019, Novak and Wenzel first brought a replevin action (conventionally called "claim-and-delivery" in Michigan) against the "Saginaw County Sheriff's Office" in Saginaw County's Tenth Circuit Court. After allowing Novak and Wenzel to amend their complaint to add the "Saginaw County Sheriff" in his official capacity as a defendant but before the Sheriff was ever served, the Tenth Circuit Court sua sponte concluded it lacked jurisdiction over the entire case, dismissed it, and suggested that the state district court "ha[d] jurisdiction over such proceedings." **Tenth Cir. Ct. Op. & Order Granting Summ. Disposition to Defs., RE 11-15, PageID # 1141-1144**.[7] Going to the other state district court purporting to have jurisdiction, Novak and Wenzel filed a second state suit for claim-and-

---

[7] "[W]here a court is without jurisdiction in the particular case, its acts and proceedings can be of no force or validity, and are a mere nullity and void. *Fox v. Bd. of Regents*, 134 N.W.2d 146, 148 (Mich. 1965).

`

delivery against the sheriff's office alone (not the sheriff directly) in Michigan's 70th District Court. In a one-page order, the 70th District Court granted summary disposition after concluding the "sheriff's office" was "not a legal entity subject to suit" and the claim-and-delivery action brought solely against the sheriff's office was "barred by governmental immunity" as against this entity. **Summ. Disp. Order, RE 11-24, PageID # 1252**.

As part of that state "district court" case, Plaintiffs had sought relief, by motion, pursuant to M.C.L. § 600.4705 as suggested by the original circuit court action while in the state district court. **Motion, RE 13-11, PageID # 1415-1416**. Plaintiffs' request was ignored. There was no success in the state court purportedly, but apparently not, having such jurisdiction. **Summ. Disp. Order, RE 11-24, PageID # 1252**. Throughout those cases, the Sheriff's Office repeatedly bellowed that it was the wrongly-named party and asserted Plaintiffs should have "named, identified, or served process on the proper party to this litigation, Saginaw County Sheriff William Federspiel." **Sheriff Office's Br., RE 10-14, PageID # 750**. Plaintiffs took this advice to heart and

`

filed this case against Sheriff Federspiel—in federal court. [8]

In August 2021, Novak and Wenzel filed a 42 U.S.C. § 1983 action in federal court solely against Sheriff Federspiel (in both his individual and official capacities[9]) alleging various violations of their rights under the United States Constitution. And just as in the state court actions, they also sought the immediate return of their alleged firearms under Michigan's *Claim-and-Delivery* statute via supplemental jurisdiction. Plaintiffs would have filed claim labelled as a "forfeiture claim," but Michigan law is clear—only the Michigan attorney general, a prosecuting attorney, or a city or township attorney can institute a civil action for forfeiture. M.C.L. § 600.4707(4).

Initially, the District Court stayed the federal case before Sheriff Federspiel even made an appearance. This Court reversed. *Novak,* 2022 U.S. App. LEXIS 21415. On remand, the District Court again stayed the case to certify three questions to the Michigan Supreme Court over

---

[8] Defendant tries to suggest that immunity applies to the claim-and-delivery count. Defendant is wrong and the District Court correctly rejected the claimed defense. **Opinion, RE 97, PageID # 2966** ("GTLA immunity does not bar their 'claim and delivery' claim" citing *Wright v. Genesee Cnty.*, 934 N.W.2d 805, 809 (Mich. 2019)).

[9] Naming Sheriff Federspiel in his official capacity is naming the County of Saginaw. *Ostipow,* 824 Fed. App'x at 338.

`

Plaintiffs' forceful objections. Plaintiffs appealed. But before this Court dealt with that challenge, the Michigan Supreme Court declined the District Court's request. *In re Certified Questions from U.S. Dist. Ct. for E. Dist. of Mich.,* 989 N.W.2d 812 (Mich. 2023).

Plaintiffs then filed an early but limited motion for summary judgment just on the claim-and-delivery count and his Fifth Amendment temporary taking claims against Sheriff Federspiel in his official capacity. **MSJ, RE 82, PageID # 2708-2733**. They also separately brought a motion for discovery given the need for *Monell* evidence for the rest of the federal claims. **Motion for Discovery, RE 83**. Sheriff Federspiel, on the other hand, brought a wide-ranging motion challenging the entirety of the twelve-count complaint. **MSJ, RE 90.** The District Court sided with Defendant in a thirty-nine-page opinion (despite not a single moment of discovery provided) and dismissed the case. **Opinion, RE 97.**

For the outlined reasons, that was in error and reversal is required.

`

## SUMMARY OF ARGUMENT

Section 1983 (and the federal forum) exists to provide a remedy where state law is "inadequate" or to otherwise "provide a remedy where a state remedy, though adequate in theory, was not available in practice." *Monroe v. Pape*, 365 U.S. 167, 173-174 (1961). This is such a circumstance. Here, Michigan's *Omnibus Forfeiture Act* is both "inartful draft[ed]," **Opinion RE 97, PageID # 2953**, and inadequate in practice. And to the extent it *could have been* adequate, such failed because Sheriff Federspiel wrongfully disobeyed and disregarded his legal duties under that state law to provide required notice under M.C.L. §§ 600.4704 and 600.4707, as he was mandated to do at two different times. It resulted in a chain of inaction that effectively permanently dispossessed Plaintiffs' fourteen firearms (private property) because the Sheriff simply will not return the firearms to innocent owners. This violated various provisions of the federal Constitution that can be remedied by this federal case, which the District Court erroneously failed to do. Reversal is required.

-14-

`

## STANDARD OF REVIEW

A district court's denial of discovery is reviewed on an abuse of discretion standard. *Plott v. General Motors Corp.*, 71 F.3d 1190, 1197 (6th Cir. 1995). On the other hand, this Court "review[s] a grant or denial of summary judgment de novo, using the same Rule 56(c) standard as the district court." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). Courts must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

`

# ARGUMENT

## I.    Overriding Problems

One of the biggest problems infecting this case was the District Court's confusion over and misunderstanding of Michigan's forfeiture law. For reasons that remain unclear, the District Court has erroneously continued to believe that Michigan law, namely the *Omnibus Forfeiture Act* or OFA, somehow allows private citizens to commenced for forfeiture proceedings. But that is simply not true. It was repeatedly explained below that Plaintiffs cannot initiate property forfeiture proceedings under Michigan law—only certain government official can.[10] E.g. **Pfs.**

---

[10] Being that each firearm is worth under one hundred thousand dollars, a "local unit of government seeking forfeiture of the property," i.e. the firearms, "shall give notice of the seizure of the property… and the intent to begin proceedings to forfeit and dispose of the property" and such notice is required no later than "*within 28 days <u>after</u> the conviction of a person of a crime.*" M.C.L. § 600.4707(1). It is only at that point in a very defined window—being "*within 28 days <u>after receipt of the notice</u>*"— that "a person claiming an interest in property subject to the notice may file a claim with the local unit of government expressing his or her interest in the property and any objection to forfeiture." M.C.L. § 600.4707(2). After that objection is filed, the government—by way of a certain enumerated list of three designated officials (i.e. the attorney general, the prosecuting attorney, or the city or township attorney)— "shall institute a <u>civil action</u> for forfeiture within 28 days after the expiration of the 28-day period." M.C.L. § 600.4707(4). Thus, the statute does not give any property owner any right to commence a forfeiture proceeding as a matter of first strike or under M.C.L. § 600.4707(4) when the criminal case is completed. But, notwithstanding, this Court has

-16-

`

**Resp. Br., RE 51, PageID # 2244-2254**. And Defendant equally conceded he cannot initiate it either, though he has continued possession of fourteen firearms. **Df. Resp. Br., RE 57, PageID # 2339** (pointing to prosecutor); **PageID # 2339** (acknowledges as being "in possession of the firearms"). But even if he desired forfeiture, the 28-day timeframe to do so has long passed and the ability to seek forfeiture has been (ironically) forfeited by the government. ***Id.* at PageID # 2345.** Yet the Sheriff will not return the firearms.

As outlined herein, Section 1983 exists to provide a remedy where state law is "inadequate" or to otherwise "provide a remedy where a state remedy, though adequate in theory, was not available in practice." *Monroe*, 365 U.S. at 173-174. And there is no state-process or state-remedy exhaustion requirements *before* bringing Section 1983 claims in the federal forum. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2172-2173 (2019) (approvingly reciting that plaintiffs may bring constitutional takings claims under § 1983 "without first bringing any sort of state lawsuit, even when state court actions addressing the underlying

---

explained the "general rule is that seized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated." *Francis*, 646 F.2d at 262.

`

behavior are available"); *Monroe*, 365 U.S. at 183 (the remedy provided by Section 1983 "is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."); *McNeese v. Bd. of Educ. for Comm. Unit Sch. Dis*, 373 U.S. 668, 672 (1963); *Damico v. California*, 389 U.S. 416, 417 (1967). The Supreme Court has expressly "on numerous occasions rejected the argument that a § 1983 action should be dismissed" or cast aside "where the plaintiff has not exhausted state administrative remedies." *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982) (plus citing eight more cases of the same). This Court and other circuits have echoed the same. *Kanuszewski v. MDHHS*, 927 F.3d 396, 409 fn.5 (6th Cir. 2019) (citing *Monroe*, 365 U.S. at 183); *Hochman v. Bd. of Educ.*, 534 F.2d 1094, 1096 (3d Cir. 1976) ("the exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court."). In short, why this District Court did not immediately take up the Fifth Amendment claim per *Frein* first remains baffling.

In that same ball of confusion, Defendant has repeatedly asserted that a person who believes he should get his taken property back should file "a motion" in "criminal court" pursuant to M.C.L. § 600.4705. But

`

that very state-level district court (which was the criminal court in *Heinrich*) has already explained that such is not possible. And even if he had existed, the reason Plaintiffs could not have done so was because the Sheriff failed to provide the required notice under M.C.L. § 600.4704. See *supra*. As the 70th District Court has confirmed, the criminal case is a "dead" letter (i.e. closed), and instead a "claim and delivery action" must be filed. **70th Dist. Ct. Transcript, RE 67-8, PageID # 2551** (the *Heinrich* criminal case is "all done and over with. That's - that's dead. I mean that case is over with, and from a practical standpoint I know [the Sheriff's office] is saying, hey, send 'em back over to Judge Frank for Judge Frank to say, hey, look, my case is all over and done with. You're gonna have to file a claim and delivery action. That's something that's available to a litigant."). Defendants demanded use of a "dead" state statutory remedy does not preclude or resolve the federal civil rights claims made in this case.

## II.    Undisputed Affidavits

Repeatedly throughout the case and repeatedly in the final opinion, the District Court stated that Plaintiffs' unchallenged declarations of the firearms' ownership creates a material question of fact. E.g. **Opinion,**

`

**RE 62, PageID # 2423** (calls Plaintiffs' assertion that there is no dispute that Novak and Wenzel do own the firearms "patently without merit"). Each instance it did such, it was in error.

When a party attaches an affidavit swearing to facts under the pains of perjury for summary judgment purposes, "a party opposing" such "may not rest on mere allegations or denials of his pleading, but must set forth specific facts *showing* that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). This "showing" is usually accomplished by a counter-affidavit. Yet Defendant filed none. "Where a motion for summary judgment is supported by an affidavit, which is uncontroverted, the trial court is warranted in sustaining the motion." *Williams v. Baltimore & O. R. Co.*, 303 F.2d 323, 324 (6th Cir. 1962) (citing *Schaffer v. United States*, 232 F.2d 632 (6th Cir. 1956)); see also, *Casinelli v. United States*, 703 F.2d 559 (6th Cir. 1982) (where plaintiff failed to respond to affidavits filed by government with its motion for summary judgment, if the uncontroverted affidavits of the defendant establish that there was no genuine issue and that it was entitled to judgment in its favor, it was appropriate for the court to enter summary judgment).

`

Here, Defendant—being a major law enforcement agency from a larger Michigan county with enormous resources to investigate firearm ownership—has offered no evidence that ownership of these firearms belonged to someone else other than as Plaintiffs aver. Yet, all Defendant has done in response is make and rest upon subjective denials. That is simply not enough not create a material question of fact and thus, with a fair view of Plaintiffs uncontested and sworn-to assertions, the issue of ownership is not in any way in dispute. The lack of any counter-affidavit from Defendant is not at all surprising—Defendant has repeatedly asserted it lacks any personal knowledge of who are the owners of the firearms.[11] In the face of the lack of knowledge of who is the owner, it

---

[11] But taking up the academic argument, even if Heinrich is *arguendo* deemed the owner of the firearms, it does not mean he lost *ownership* rights. Assuming hypothetically that Heinrich was convicted of a disqualifying felony, "nothing in th[at] statute severs a felon's ownership interest in his or her firearms" and "a felon continues to own his or her firearms but [merely] may not actually or constructively possess them or engage in any of the other prohibited activities listed in the statute." *People v. Minch*, 825 N.W.2d 560, 562-563 (Mich. 2012). The United States Supreme Court reached the same conclusion as to 18 U.S.C. § 922. *Henderson v. United States*, 135 S. Ct. 1780 (2015). And in the absence of successful forfeiture, Defendant must "retain possession as constructive bailee until [the convicted] is lawfully entitled to possession of his firearms" else face a Fifth Amendment takings suit. *Minch*, 825 N.W.2d at 565; see *Frein*, 47 F.4th at 251.

`

should be treated as undisputed and unrebutted fact that Novak and Wenzel are the owners of their respective firearms, as is consistent with their unrebutted affidavits.

## III.    Plaintiffs' Motion for Summary Judgment

It is *factually* undisputed on this record that 1.) Defendant Sheriff Federspiel does not own the firearms (i.e. private property) previously taken into law enforcement's possession and under his current control and 2.) Plaintiffs own their firearms. **Novak Decl., RE 13-6, PageID # 1379; Wenzel Decl., RE 13-7, PageID # 1381; Heinrich Affidavit, RE 32-12, PageID # 1974.** And *legally* undisputed, federal law[12] is expressly clear – upon the termination of criminal proceedings, any taken property should be returned to the rightful owner. *Francis*, 646 F.2d at 262 ("The general rule is that seized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated."); *Chambers*, 192 F.3d at 376; see also *Washington*, 351 N.W.2d at 580. Thus there is no reason for the continued dispossession of the firearms from Plaintiffs given that the criminal case of Benjamin

---

[12] Our "public officials owe their allegiance to the Constitution <u>first</u>, federal laws second, and state laws third." *Alleghany Corp. v. Haase*, 896 F.2d 1046, 1055 (7th Cir. 1990) (Easterbrook, J, concurring).

`

Heinrich is long over. **Probation Discharge Order, RE 13-3, PageID # 1372.** In short, the Sheriff Defendant has no reasoned basis to continue to dispossess Plaintiffs of their rightful private property. The duty to return the fourteen firearms has been triggered and yet Defendant refuses to obey the clearly established rule under *Francis* and related progeny.

### A.   Temporary Taking

Plaintiffs have argued that what the Sheriff has and is doing, post-criminal conviction of Heinrich, is one of two types of taking contrary to the Fifth Amendment. **First Am. Compl., RE 79, PageID # 2628-2632**. However, the District Court held that "a state's seizing and retaining property as part of a criminal investigation is not a 'taking' for a 'public purpose' under the Fifth Amendment, and thus does not give rise to a claim for just compensation." But that misses the mark. That conclusion is only initially true; it thereafter ends when the criminal prosecution (that necessitated any dispossession of private property as potential evidence) has been completed. *Thereafter*, all private property must be returned to its owners. E.g. *Francis*, 646 F.2d at 262. Refusing to return private property for a public purpose is a taking.

`

While this case was pending below, the Third Circuit in *Frein* provided an instructive decision on this theory. There, a young man committed a heinous gun crime against two state troopers. See *PA Can't Keep Guns Seized from Eric Frein's Parents*, WNEP 16, Aug 30, 2022, *available at* http://olcplc.com/s/FYq7 (for background). Law enforcement went to his home (which he shared with his parents) to locate evidence. Instead of only seizing the utilized firearm, law enforcement seized the utilized firearm and an additional forty-six other guns belonging to the parents as innocent third party owners. The young man was arrested, tried, convicted, and sentenced to death. As here, the government never used the guns it had seized *from the parents*—not at trial, at sentencing, or on appeal—and never arrested or charged the parents or otherwise alleged that any of their guns were involved in the crime. *Frein*, 47 F.4th at 250. The parents sued when law enforcement would not return their firearms.

After explaining that "the point of seizing evidence is to use it in a criminal proceeding," the Third Circuit blessed that "the government may hang onto it through that proceeding." *Id.* at 252. However, "[i]f the government wants to keep the property *after* the conviction becomes

`

final, it needs some justification." *Id.* at 253. It could, for example, attempt secure title by civil or criminal forfeiture under state law by proving the owners' guilt. *Id.* Or it could establish that the seize property is contraband. *Id.* When the case's circumstances "fall into none of these categories" and "the government has not compensated the parents for the guns either, their takings claim may proceed." *Id.*

Plaintiffs Novak and Wenzel have proceeded accordingly. **First Am. Compl., RE 79, PageID # 2628-2630.** Just like the plaintiff-parents in *Frein*, Novak and Wenzel are challenging Defendant's "continued retention of the guns *once the criminal case ended.*" *Frein*, 47 F.4th at at 251 (emphasis added); **First Am. Compl., RE 79, PageID # 2626** (*As of January 7, 2019*, Defendant William Federspiel *thereafter* had no lawful basis to retain possession of the fourteen firearms." emphasis added). The takings claim is up to the task because "their guns are 'private property'" that "were 'taken' by the officials" with "hav[ing] never gotten a dime, let alone 'just compensation.'" *Id.* The "claim checks all the Fifth Amendment boxes." *Id.*

Other appellate courts have agreed. The Federal Circuit decided *Jenkins v. United States*, 71 F.4th 1367 (Fed. Cir. 2023). Brodrick

`

Jenkins owned two vehicles. Thinking he was a drug dealer, the DEA seized both which were held in a tow yard. *Id.* Jenkins later sought return of the vehicles and the government could not locate them. *Id.* Trying to assert a police powers defense, the *Jenkins* Court was clear to distinguish "insulat[ion]… from liability for an initial seizure" versus "takings liability for the period after seized property is no longer needed for criminal proceedings." *Id.* There is "liability for a taking if the property is not returned after the government interest in retaining the property ceases." *Id.*[13]

The government in *Jenkins* also tried the same argument that Defendant has repeatedly made (and the District Court tries to force) here)—just use local law to effectuate the return of property. But the Federal Circuit made the same observation that Plaintiffs have been making in this case—the Supreme Court in *Knick* has held that "a property owner does not need to exhaust state court remedies in order to bring a federal Fifth Amendment takings claim." *Jenkins,* 71 F.4th at

---

[13] Michigan law parrots the same. An owner of property seized by police but is no longer the subject to any criminal proceedings or has otherwise been forfeited "is entitled to the return of the property unless there is a lawful reason to deny him its return." *Washington*, 351 N.W.2d at 580.

`

1374 (citing *Knick*, 139 S. Ct. at 2167-2168). The Fifth Amendment "allows the owner to proceed directly to federal court under §1983" "no matter what sort of [state level] procedures the [local] government puts in place to remedy a taking." *Knick*, 139 S. Ct. at 2170-2171.

Below, Plaintiffs sought partial summary judgment on the claim labelled as "Count 1" as a per se physical, but temporary, taking. **MSJ, RE 82, PageID # 2708-2733**. The District Court erred in not granting the motion and ordering the return of the firearms by injunction ending the taking and then separately compensate Plaintiffs for the period of the *temporary* taking.

## B.    Ordered Return of Firearms

### i.    *Based on the Fifth Amendment*

For Plaintiffs' first form of remedy under the Fifth Amendment, the District Court was requested to immediately end the current taking-without-just-compensation. As previously conceded by Defendant, he has no interest in keeping or taking title to the firearms. **Df. Resp. Br., RE 57, PageID # 2343** ("The Sheriff did not and does not seek to forfeit the firearms"); **CA6 Oral Arg.** ([http://olcplc.com/s/n8b6](http://olcplc.com/s/n8b6)) **at 21:10** (Sheriff's counsel: "I don't know if there ever was an intent to do a forfeiture" by

`

the Sheriff). He claims to "seek[] only to return them to their lawful owner(s)." **Df. Resp. Br., RE 57, PageID # 2343.** But when the government becomes incalcitrant, a taking occurs. *Frein* teaches us that and provides confirmation of a remedy.

Plaintiffs may obtain "a declaration and injunction requiring the [government] to return their property" to stop the ongoing violation of the Fifth Amendment. *Frein*, 47 F.4th at 258. Injunctions against on-going takings are long recognized. E.g. *Osborne v. Missouri Pac. R. Co.*, 147 U.S. 248, 258-259 (1893); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 584-585 (1952); *Tindal v. Wesley*, 167 U.S. 204, 222-223 (1897) (holding that state officers were subject to ejectment where state had not acquired property by paying just compensation). "If a government took property without payment, a court would set aside the taking because it violated the Constitution and order the property restored to its owner." *Knick,* 139 S. Ct. at 2176. That relief should have been ordered by the District Court.

### ii.    *Based on Replevin / Claim and Delivery*

If this Court concludes that the District Court could not issue an injunction to order the return of the firearms to their owners under the

`

Fifth Amendment as *Frein* and other cases provide, it can alternatively do so under a claim of claim-and-delivery state-law remedy.[14]

"A civil action may be brought to recover possession of any goods or chattels which have been… unlawfully detained." M.C.L. § 600.2920(1); see Mich. Ct. R. 3.105(A). Detain means to "hold back" or "to hold." WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 4th ed. "If the property is not in the possession of the party who is entitled to possession, a judgment *must* order the property to be immediately delivered to that party." Mich. Ct. R. 3.105(H)(2) (emphasis added). "In replevin, the court may determine, not only the question of the right of possession, but *also the right of property*." *Burke v. Murray*, 210 N.W. 321, 322 (Mich. 1926) (emphasis added). It may also "determine… title to the property for temporary or permanent purposes connected with that possession." *Clark v. West*, 23 Mich. 242, 247 (1871). As of when this case was filed (and still true today), the Sheriff Defendant is not "entitled to possession" of

---

[14] The claim-and-delivery is the modern legal phrase to describe what is commonly known as replevin. Michigan's prior replevin statute was declared unconstitutional when it "denie[d] the right to a prior hearing before chattels are seized from their possessor." See *Inter City Motor Sales v. Judge of the Common Pleas Court for Detroit*, 201 N.W.2d 378, 382 (Mich. Ct. App. 1972).

`

Plaintiffs' firearms. This is clearly established. *Francis*, 646 F.2d at 262; *Chambers*, 192 F.3d at 376; *Frein*, 47 F.4th 252-253; *Jenkins*, 71 F.4th at1373-1374.[15] Yet Defendant possesses all the firearms, **Property Room Records, RE 13-8, PageID # 1383-1396**, that Plaintiffs own, **Novak Decl., RE 13-6, PageID #1379**; **Wenzel Decl., RE 13-7, PageID #1381.** There has been no forfeiture of any of the firearms and an express confirmation of no intention to ever seek forfeiture, **Df. Resp. Br., RE 57, PageID # 2345** ("The Sheriff has never sought to forfeit the firearms, and even if he did, the deadline has long since passed for him to do so."), thus there is no lawful reason to deny Plaintiffs the return of

---

[15] An owner of property seized by the police but is no longer the subject to any criminal proceedings or has been forfeited "is entitled to the return of the property unless there is a lawful reason to deny him its return." *Washington*, 351 N.W.2d at 580. "The burden of proof to establish a lawful reason to deny the return of the property to the person from whom it was seized was on the police." *Id.* A prior question arose within the District Court as to whether an innocent owner can file "a motion" in a closed criminal case to seek the return of the property taken. The state court who could have rendered such relief answered "no." **70th District Court Transcript, RE 67-8, PageID # 2449-2551**. One would "have to file a claim and delivery action." ***Id.* at PageID # 2551**. Moreover, only certain government officials (whom Plaintiffs are not) can commence a forfeiture action assuming that proper notice had been provided under Section 4707(1)-(2) (which Defendant never did). See M.C.L. § 600.4707(4) ("The <u>attorney general</u>, the <u>prosecuting attorney</u>, or the <u>city or township attorney</u> shall institute a civil action for forfeiture within 28 days after the expiration of the 28-day period.").

`

all of their owned firearms. Defendant has no right to continue to unlawfully detain by failing in the duty to affirmatively return. The District Court erred in not ordering their prompt return.

### C.    Damages

Temporary takings effectuate the deprivation of property for a period of time "for which the Constitution clearly requires compensation." *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 318 (1987); see also *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 24 (2012) ("takings temporary in duration can be compensable"); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) (Kennedy, J., concurring) ("If [a] deprivation amounts to a taking, its limited duration will not bar constitutional relief."). The obligation to pay just compensation for temporary takings "is not different in kind from permanent takings." *First English*, 482 U.S. at 318. Instead, the only difference is that the government must pay "fair value for the *use* of the property," rather than paying for it outright. *Id.* at 322 (emphasis added). This is because "the *duration* of an appropriation... bears… on the amount of compensation" due. *Cedar Point Nursery v. Hassid,* 141 S. Ct. 2063, 2074 (2021) (citing *United States v. Dow*, 357

`

U.S. 17, 26 (1958)); see also *Kimball Laundry Co. v. United States*, 338
U.S. 1 (1949). And that fact that the taken property here in personal
property rather than real property does not matter. *Horne v. Dep't of
Agric.*, 576 U.S. 351, 357 (2015).

Below, the District Court was requested not to determine the
amount of just compensation damages due but only that *an amount* is
due under the Fifth Amendment with the dollar figure to be determined
at trial. Rather than granting this relief, the District Court dismissed the
claims. That was in error. Reversal and instructions for entry of such an
order on remand is requested.

### D.    Dismissal Was in Error

The District Court did not follow the path Plaintiffs proposed. What
it did conclude was that "even assuming *arguendo* Plaintiffs owned the
firearms, Defendant did not unlawfully 'take' them in violation of the
Fifth Amendment." That was in error. It is true that Plaintiffs take the
position Defendant did not "take" Plaintiff firearms when they grabbed
them up on the fateful evening of October 24, 2017. But a taking *later*
happened. The "take" occurred when the criminal prosecution ended and
the duty to return private property must be fulfilled once criminal

`

proceedings came into effect, e.g., Frein, 47 F.4th at 251 and *Francis*, 646 F.2d at 262, and Defendant refused to return it when demanded (likely in February 2019). When that duty was disobeyed, a taking occurred. The Third and Federal Circuits in *Frein* and *Jenkins* got it right; the District Court did not follow those rationales. This Court should. Reversal is warranted.[16]

## IV.    Defendant's Motion for Summary Judgment

Defendant Federspiel sought, and was granted, relief against the remaining claims pled. The District Court's decision in granting such was in error. Reversal is required.

### A.    Permanent Taking

Plaintiffs brought two takings theories—a temporary versus a permanent taking. The permanent-takings claim was pled in the

---

[16] The District Court also held that Sheriff Federspiel in his *personal* capacity (as opposed to his official capacity) is entitled to qualified immunity from any takings claims. But Plaintiffs never sought summary relief against him in his *personal* capacity. See **Plaintiffs' MSJ, RE 82, PageID # 2708-2733.** Even so, the District Court reached the right outcome based on new precedent recently issued by this Circuit. *O'Connor v. Eubanks*, 83 F.4th 1018 (6th Cir. 2023). Plaintiffs assert that, on that point, *O'Connor* was wrongly decided and is being challenged before the United States Supreme Court. For preservation purposes, *O'Connor*'s application of qualified immunity for liability against officials in their personal capacities should be rejected.

`

alternative to the temporary-takings claim. **First Am. Compl., RE 79, PageID # 2630**. The District Court made no distinction when holding the Sheriff "did not unlawfully 'take' [the firearms] in violation of the Fifth Amendment." **Opinion, RE 97, PageID # 2950**. Because the reasoning was erroneous under both theories (as discussed above), reversal is required.

The question is one of remedy. If this matter is considered a "temporary" taking, Plaintiffs can be restored their firearms and Defendant must only pay "fair value for the *use* of the property" during the deprivation period. *First English*, 482 U.S. at 318. However, if that theory legally fails, Plaintiffs are otherwise entitled full compensation as a permanent taking and Defendant must pay the full fair market value of the firearms.[17] Either way, however, the District Court erred in dismissing both theories and reversal is required.

### B.    Procedural Due Process

To establish a claim for procedural due process under § 1983, a

---

[17] Currently, Defendant is under a federal injunction not to "destroy, sell, or otherwise dispose of the firearms that are the subject of this present litigation, until the conclusion of this present litigation including any appeals" or "until further order of th[e District] Court." **Stipulated Order, ECF No. 78, PageID.2616, 2618.**

`

plaintiff must establish three elements: (1) that they have a property interest protected by the Due Process Clause of the Fourteenth Amendment, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002). A procedural due process § 1983 case in federal court lies when there was a constitutional violation under color of law and "the state did not have a remedy; or the state had a remedy but it was deemed inadequate; or the state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

The first two element under *Med. Corp.* are easily shown. Plaintiffs have a property interest in their firearms, as they own them, and are entitled to them back. **RE 13-6, PageID # 1379**; **RE 13-7, PageID # 1381; RE 13-3, PageID # 1372**; *Francis*, 646 F.2d at 262.[18] Plaintiffs

---

[18] This is where the District Court *again* goes off-course holding that there is a material question of fact as to the ownership of the firearms for due process purposes. **Opinion, RE 97, PageID # 2951.** There is not. Plaintiffs supplied declarations; Defendant did not rebut them. As such, there is no material question of fact on ownership. That

`

have been deprived of their firearms and are refused to be returned. The first two elements are fulfilled.

The third element seeks to determine whether the state failed to afford Plaintiffs adequate procedural rights prior to depriving them of their protected interest.[19] The District Court found that the process from Michigan's *Omnibus Forfeiture Act* "provides constitutionally sufficient postdeprivation process." **Opinion, RE 97, PageID # 2952**. Perhaps in some other cases it does, but here it does and did not. And that is actionable. *Hahn*, 190 F.3d at 716 (due process can be violated when the "state had an adequate remedy in form, both procedurally and in damages, *but the state did not apply it or misapplied its remedy*.").

Michigan law provides a process that kicks off with the Sheriff (as the seizing agency) being required, within 28 days after personal property is seized as well as within 28 days after the conviction of a

---

was in error. See Part II, *supra*. However, the balance of the analysis proceeded on the *assumption* that Plaintiffs had property interests in the ownership of their firearms. ***Id.***

[19] However, even if a "situation necessitates 'quick action' by the state or makes efforts to provide a meaningful predeprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate *postdeprivation* procedure." *Johnson v. City of Saginaw*, 980 F.3d 497, 508 (6th Cir. 2020) (emphasis added).

`

person of a crime, to "give notice" by certified mail or alternatively "published in a newspaper of general circulation"[20] regarding "the seizure of the" firearms to 1.) the person charged; 2.) each person with a known ownership interest in the property; and 3.) several others with security interests. M.C.L. §§ 600.4704(1)-(2), 600.4707(1). The Sheriff did none of these. So even if we accept the Sheriff at his unsworn word and assume he did not know the actual owners, that does not provide a free pass from providing *some sort* of constitutionally-required process. Perhaps that is why notice by publication was statutorily required—it could have provided some notice.[21] Yet, the Sheriff totally failed to undertake *any*

---

[20] Plaintiffs believe that none was completed by the Sheriff's Office. **Rule 56(d) Declaration, RE 94-4**.

[21] The District Court suggested that Plaintiffs were not entitled to any notice because their ownership was not "known." That was in error. **Opinion, RE 97, PageID # 2954**. The OFA requires hand-delivery or certified mail notice to "known" owners. M.C.L. § 600.4704(2). However, "*if the name and address of the person are not reasonably ascertainable* or delivery of the notice cannot reasonably be accomplished, the notice shall be published in a newspaper of general circulation in the county in which the personal property was seized or the real property is located for 10 successive publishing days." *Id.* As such, *unknown* owners are statutorily entitled to notice as well – albeit by publication. The Sheriff never provided any notice by publication. **Rule 56(d) Declaration, RE 94-4, PageID # 2914.** In short, all owners, whether known or unknown, are entitled to some form of notice, which was not provided by the Sheriff in any way.

`

process whatsoever. **Rule 56(d) Declaration, RE 94-4, PageID # 2914**.
He did nothing and therefore violated due process.

The District Court opined that the Sheriff cannot be faulted because
only the prosecutor can initiate forfeiture proceedings. But that misses
the mark. Before the county or local prosecutor can perform his task of
launching proceedings, the Sheriff was expressly responsible for the
initial notice. M.C.L. § 600.4704(1)-(2). Only after accomplishing that
may the owners then "file a claim with the local unit of government,"
"within 28 days after receipt of the notice, "expressing [their] interest in
the property and any objection to forfeiture." M.C.L. § 600.4707(2).
*Thereafter*, the "attorney general, the prosecuting attorney, or the city or
township attorney shall institute a civil action for forfeiture within 28
days after the expiration of the 28-day period" where the government has
the burden of proof to establish that "the property is the proceeds of a
crime, the substituted proceeds of a crime, or an instrumentality of a
crime" or that the "person claiming the interest in the property had prior
knowledge of, or consented to the commission of, the crime." M.C.L. §
600.4707(6). And completely absent from M.C.L. § 600.4707(6) are
private citizens as being one of the types of parties who can commence

`

forfeiture proceedings. But why should they be? Folks like Plaintiffs do not desire; they want the returned of their private property!

In trying to make sense of the "stalemate" caused by "the inartful drafting of the OFA," **Opinion RE 97, PageID # 2953**, the District Court correctly recites that "Plaintiffs maintain they cannot proceed under [M.C.L.] § 600.4705(1) because they never received notice of the seizure under the statute, Heinrich's criminal prosecution has concluded, and because it is unclear whether such a motion is even 'an available avenue of relief' when the government has not initiated forfeiture proceedings." But then the District Court faults Plaintiffs – who had no notice provided and not provided any opportunity to be heard – to somehow know that they must appear in a criminal court case (that does not involve them) and file a third-party motion to seek return of private property that they never asked to be deprived of or committed any crime to warrant its dispossession. And even when Plaintiffs, two blue-collar lay-persons, started to ask how can they get their firearms back, they were not directed to the criminal court or provided notice under M.C.L. § 600.4704(1)-(2). Instead, the policy of the Sheriff was that "the longer we keep the guns," i.e. permanently deprive them from Plaintiffs, "the

`

better." **Emails, RE 13-5, PageID # 1377.** So even if the process that is on-the-books at M.C.L. §§ 600.4704 and 600.4707 is somehow facially sufficient for due process, Defendant still violated the Fourteenth Amendment when he "did not apply it" and left Plaintiffs with no provided notice or process whatsoever. *Hahn*, 190 F.3d at 716. As such, Plaintiffs have not been provided any notice or the opportunity to be heard regarding deprivation of their private property. The District Court, for reasons that are unclear, simply refused to acknowledge and find that Defendant failed his responsibilities to provide any process, let alone the one required by M.C.L. §§ 600.4704 and 600.4707. That is in error. The Sheriff failed to follow the forfeiture process provided by the OFA or otherwise provided a post-deprivation hearing to determine the validity of continued retention of Plaintiffs' personal property before forfeiture is attempted or completed. It is not Plaintiffs' refusal to utilize the process provided, but _the Sheriff's_ failure to have provided _any_ process at all to kick-start the process. The Supreme Court recently confirmed that when governments want to dispossess individual of personal property, "due process requires a timely post-seizure forfeiture hearing." *Culley v. Marshall*, 144 S. Ct. 1142 (2024). And Michigan law places the

-40-

`

responsibility of commencing that process due to Plaintiffs on the Sheriff, M.C.L. §§ 600.4704 and 600.4707, (which makes sense because his agency is the one who seized the property), and he failed to undertake the same. Thus he was not entitled to summary judgment as he has violated Plaintiffs' procedural due process rights. Reversal is required.

## C.    Substantive Due Process

"Substantive due process is the doctrine that governmental deprivations of [] property are subject to limitations regardless of the adequacy of the procedures employed." *Johnson*, 980 F.3d at 497. Upon a showing of a deprivation of a constitutionally protected interest, "a plaintiff must show how the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Guertin v. State*, 912 F.3d 907, 922 (6th Cir. 2019). The avenues to do that include showing government action is arbitrary and capricious, willful and unreasoning, conscience-shocking, or extremely irrational. *Johnson*, 980 F.3d at 513; *Johnson v. Morales*, 946 F.3d 911, 937 fn4. (6th Cir. 2020); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).

On repeat mode, the District Court first suggests that a material question of fact exists as to Plaintiffs' property rights. Again, that is in

`

error (and must be corrected). Part II, *supra*. But, also like before, the trial court proceeded assuming a property interest but held that "subsequent retention did not shock the conscience and was not arbitrary nor capricious." **Opinion, RE 97, PageID # 2958.** That too was in error and reversal is required.

The basics are established—the retention of the firearms is unlawful. *Francis*, 646 F.2d at 262; *Chambers*, 192 F.3d at 376; *Washington*, 351 N.W.2d at 580; *Frein*, 47 F.4th at 253. The Sheriff purports to be keeping possession of the firearms (seemingly indefinitely) pursuant to a state statute yet at the same time has intentionally (or at least negligently) failed to follow the expressed procedural requirements of that same statute (by timely commencing it). **Rule 56(d) Declaration, RE 94-4, PageID # 2914 (¶¶6-9)**. Picking and choosing limited parts of an overall statute to obey, in the absence of valid justification, permits a "reasonable jury" to find that Defendant has "acted arbitrarily and capriciously" in retaining the firearms. *Johnson*, 980 F.3d at 515. Such is not "rational" as held by the District Court. It is irrational *and* arbitrary *and* capricious. Yes, perhaps the Sheriff had the right to temporarily take possession of the firearms, but he has no

`

rational basis in not returning them to their rightful owners—and that
ownership has gone undisputed in this case. Deprivation of property
without providing any means to effect the return required by *Francis*
suffers from clear irrationality. As such, Defendant is not entitled to
summary judgment. Reversal is thus required

## D.   Second Amendment

Plaintiffs have alleged depriving them of their firearms, at and
after the point of the criminal case against Heinrich terminating, violated
the Second Amendment. The new controlling standard for the Second
Amendment comes from *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597
U.S. 1 (2022). "*Bruen*… fundamentally changed our analysis" of what is
"implicate[d by] the Second Amendment." *United States v. Rahimi*, 61
F.4th 443, 450 (5th Cir. 2023) *cert. granted*, 143 S. Ct. 2688 (2023).

As a threshold issue, the District Court again erroneously held that
a material question of fact exists as to the ownership of the firearms.
Again, that is in error and, again, reversal is required. Part II, *supra.*

Getting past that issue (which nevertheless warrants correction),
the District Court then assumed that Plaintiffs own their firearms but
then held Defendant did not violate the Second Amendment and granted

`

summary judgment. As to the Second Amendment claim against the Sheriff,[22] that was in error.

"[W]hen the Second Amendment's plain text covers [Plaintiffs'] conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17.[23] The framework "requires courts to assess whether modern firearms regulations [or actions by government officials] are consistent with the Second Amendment's text and historical understanding." *Id.* at 26. The Sheriff cannot "simply posit that the [action he is taking as regulatory conduct] promotes an important interest" but instead "must demonstrate that [such] is consistent with

---

[22] To help streamline the Second Amendment challenge, Plaintiffs will waive any damages sought against Sheriff Federspiel in his personal capacity for the Second Amendment claim. Qualified immunity only provides immunity *from damages*, not immunity from suit. *Kanuszewski*, 927 F.3d at 417-418 ("qualified immunity only immunizes defendants from monetary damages—not injunctive or declaratory relief"). "Qualified immunity does not apply" when suing for just declaratory and injunctive relief against an official in his personal capacity while seeking the same plus damages against the same official in his official capacity. **Opinion, RE 97, PageID # 2943**; see also *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (an official sued in his official capacity cannot assert qualified immunity as defense); *Kanuszewski*, 927 F.3d at 417-418. This now renders the affirmative defense of qualified immunity, as heavily and incorrectly utilized by the District Court, totally moot.

[23] *Bruen* rejected the means-end scrutiny approach to ruling on the constitutionality of firearms regulations and practices that had been widely adopted by intermediate federal appellate courts after *Heller*.

`

this Nation's historical tradition of firearm regulation." *Id.* at 17. The government solely has that burden. *Id.*

The new *Bruen* framework is in two steps. "Step one of *Bruen* asks the threshold question" of "whether the Second Amendment's plain text overs the individual, the type of arm, and the proposed course of conduct. *United States v. Duarte*, __ F.4th __; 2024 U.S. App. LEXIS 11323, at *4 (9th Cir. May 9, 2024).[24] Step two requires the Sheriff, not Plaintiffs, to prove the challenge regulatory action "is consistent with this Nation's historical tradition of firearm regulation." *Id.* at *12. To meet this second part of *Bruen*, "the Government must identify for [the Court] a well established and representative historical analogue… that can justify" the regulatory action. *Id.* (cleaned up). While a historical "twin" is not required, *Rahimi*, 61 F.4th at 454, a "remotely resembles" fails to meet the government's burden. *Duarte*, 2024 U.S. App. LEXIS 11323, at *39.

Below, Defendant did not even acknowledge, let alone tried to meet, the *Bruen* burden. And the District Court erred in not even remotely

---

[24] Under *Bruen*'s approach, courts review whether the Second Amendment covers *the conduct*, and not whether the person's Second Amendment rights were simply burdened. This case is not one dealing with dispossessed property that happens to include firearms, but rather property that not being returned *because it involves firearms*.

`

mandating from Defendant what *Bruen* now demands. The Sheriff would need to show our Nation's historical tradition by law enforcement agencies and officers of permanently keeping innocent owners' firearms after that criminal case that served as the basis for temporary original seizure is over. This requires evidence, at least, from Reconstruction era historical sources, but perhaps even before, see *Range v. Att'y Gen.*, 69 F.4th 96, 112 (3d Cir. 2023).[25] But because Defendant does even engage to meet its *Bruen* burden within its lower court filings, summary judgment could not and should have never been granted.

*Frein* supports this understanding and overall framework. There, the Third Circuit explained that Second Amendment protects a person's right to keep his or her own firearms. A government agent may not "barge into a home, seize guns, and keep them beyond the scope of a warrant or other authorized seizure." *Frein*, 47 F.4th at 254. It "may not 'infringe[]' on this right." *Id.* (citing U.S. Const. amend. II). By refusing to promptly return Plaintiffs' firearms after Heinrich's prosecution and sentence was

---

[25] "[T]he Supreme Court has not yet decided whether individual rights are defined by their public understanding at the time of the ratification of the Bill of Rights in 1791 or the Fourteenth Amendment in 1868."

`

over, government "infringed" on Plaintiffs' right to "keep" their arms when holding onto the fourteen firearms indefinitely.[26]

Trying the same argument raised by the government in *Frein*, the Sheriff largely suggests that seizures do not burden Second Amendment rights as long as citizens can retain or acquire *other* firearms. *Bruen* does not authorize such a reframing. Instructively, the Third Circuit in *Frein* correctly rejected that argument too (though the District Court did not address nor adopted Defendant's argument). The Third Circuit persuasively explained "[w]e would never say the police may seize and keep printing presses so long as newspapers may replace them, or that they may seize and keep synagogues so long as worshippers may pray elsewhere. Just as those seizures and retentions can violate the First Amendment, seizing and holding on to guns can violate the Second." *Frein*, 47 F.4th at 256.

Now without a qualified immunity defense, the District Court's proffered analysis becomes threadbare and naked. It simply concludes

---

[26] Regardless whether the government may confiscate guns from those who have been convicted of serious crimes or committed dangerous acts, these Plaintiffs are identical to the parents in *Frein* in that none have ever "been convicted of any crime nor committed any dangerous act." *Frein*, 47 F.4th at 256.

`

that "*Bruen*'s historical test to cover seizes and subsequent retention of individual firearms" is not "elastic" enough. **Opinion, ER 97, PageID # 2964**. But that misses the mark.

First, Plaintiffs have never challenged the initial seizure of the firearms, only their permanent retention *after* the criminal case against Heinrich ended.[27] Second, the District Court seemingly was undertaking the "judge-empowering 'interest-balancing inquiry'" that is expressly prohibited via *Bruen*. 597 U.S. at 22. Third, the District Court offers no explanation why *Frein*'s persuasive rational was wrongly decided or why it would not equally apply in these near-exact circumstances. And finally the District Court just flatly failed to engage in the mandatory *Bruen* test. Instead, its analysis focused too much on defense of qualified immunity from old case law[28] rather than the merits of the argument. Now that qualified immunity is a non-issued, see Footnote 22, *supra*, this Court should explain that the *Bruen* is mandatory analysis and/or *Frein*'s framework and outcome are the right one for these same circumstances

---

[27] The indefinite detention argument Plaintiffs are advancing are the exact ones that *Frein* adopted.

[28] The precedent cited or used by the District Court and Defendant was no longer viable given *Bruen*. Further, it was no longer controlling when the District Court rendered its decision.

`

Plaintiffs here are in. As such, summary judgment granted totally in favor of Defendant was in error and must be reversed.

### E.    Fourth Amendment

Plaintiffs readily conceded below that the Fourth Amendment does not aid in a theory to return their firearms under current binding Sixth Circuit precedent, *Fox v. Van Oosterum*, 176 F.3d 342, 349-352 (6th Cir. 1999), and has raised this claim for preservation for eventual en banc review, if required. **First Am. Compl., RE 79, PageID # 2641** (¶110). In Plaintiffs' view, the two-judge majority decision in *Fox* was wrongly decided. The proper view of the Fourth Amendment was provided by the Ninth Circuit in *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017). This current three-judge panel, while handcuffed, should *explain*, rather than find, that, but for the handcuffs of *Fox*, *Brewster* is the better and more apt constitutional standard. See *Fox*, 176 F.3d at 356 (Clay, J., dissenting in part).

### F.    Replevin (Claim and Delivery)

On the state-law replevin claim, the District Court held that the elements cannot be established and thus summary judgment is warranted. That was in error and reversal is required.

`

As a threshold issue, the District Court again erroneously held, yet again, that a material question of fact exists as to the ownership of the firearms. Again, that is in error and, again, correction is required. Part II, *supra*.

Beyond that, the District Court held that retention of the firearms, despite being undisputedly owned by Plaintiffs, cannot be "unlawful" because ownership has been and continues to be disputed. That is in error. The "object[ive]" of replevin "is to determine the right of possession at the commencement of the action,[29] as well as title to the property for temporary or permanent purposes connected with that possession." *Clark*, 23 Mich. at 247. This is *precisely* why this ancient tort of replevin (conventionally now labelled as "claim-and-delivery" in Michigan) exists—to determine who the rightful owner/possessor of personal

---

[29] Again, as has erroneously confounded the District Court, Plaintiffs have never challenged the initial seizure of the firearms in October 2017. The challenge starts once the prosecution of Heinrich was finished and there was continued possession of the firearms by the Sheriff, who has no lawful ownership or right of possession of such private property at that point on, *Francis*, 646 F.2d at 262. From that point, possession was (and is) unlawful. This is why the District Court's reference to going "back in time" to the point of the seizure, **Opinion, RE 97, PageID # 2968**, misses the mark. The determinable and relevant date is the date of commencement of the lawsuit, and not before.

`

property actually is at the time of suit and whether a replevin-defendant is wrongly depriving a replevin-plaintiff his rightful interest to private property. Simply put, when one possesses something that another says does not belong to them and the former refuses to return it to the person who has rightful ownership, it has become "unlawfully detained." A replevin-type action is properly made. The District Court erred in believing replevin not to be a legal device or theory that could resolve this dispute. Reversal is required.

### G.    Inverse Condemnation

Finally, the Court dismissed all the *Bauserman*[30] state constitutional claims after the Sheriff conceded he is a county, not state, official. **Opinion, RE 97, PageID # 2965-2966**. However, Plaintiffs alleged an inverse condemnation claim, **First Am. Compl., RE 79, PageID # 2633 (¶66)**, which is *not* a *Bauserman*-style claim, but its own stand-alone long-recognized cause-of-action under Michigan law. This cause-of-action is premised on (and not an implied action under)

---

[30] In 2022, the Michigan Supreme Court found for the first time that since statehood found the Michigan Constitution impliedly provides for cognizable direct claims for which citizen-victims may recover money damages. *Bauserman v. Unemployment Ins. Agency*, 983 N.W.2d 855 (Mich. 2022).

`

Michigan's takings protections under its state constitution. *Tamulion v. State Waterways Comm'n*, 212 N.W.2d 828, 831 (Mich. Ct. App. 1973). It has existed independently, apart from, and longer than any 'direct' taking cause-of-action only recently recognized by the Michigan Supreme Court in *Bauserman*. Compare *Bauserman*, 983 N.W.2d at 859-875 with *Peterman v. Dep't of Natural Resources*, 521 N.W.2d 499 (Mich. 1994). While such relief may ultimately be duplicative (in the end) should this Court provide relief under the Fifth Amendment's protections, Michigan's Takings Clause "afford [] owners greater protection than its federal counterpart." *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 449 (Mich. 2020). Because the District Court dismissed this stand-alone state-law claim without analyzing it and when incorrectly grouping it into the collection of *Bauserman* directly-under state constitutional claims, reversal is required.

## V.  Denial of Motion for Discovery

This case never saw a single case management order or any type of Rule 16 conference because of the seriously wayward and odd-ball procedural path this case took in the District Court and with the four prior appeals. Plaintiffs requested discovery because additional

`

evidentiary proofs are needed for the federal civil rights claims, namely under *Monell*. See *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). The District Court confirmed the same when explaining that a Plaintiffs still have the "evidentiary requirements of *Monell*." **Opinion, RE 97, PageID # 2943.** The question is whether the continued post-conviction detention of the firearms belonging to innocent owners is a county policy or the acts of the Sheriff who went "rogue." See *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021); but see *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (Michigan county sheriffs have *Pembaur* final policymaking authority *over the county's jail operations*); *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015) (explaining that "Ohio county sheriffs generally are treated as county policymakers" per *Pembaur*). It is Plaintiffs' right to have the opportunity to secure those materials and such should be given. Plaintiffs suggested that such required some requests to admit; document exchanges; and a deposition or two. This is because a civil rights plaintiff has to establish that the sued defendant did not go rogue but acted pursuant to "official policies" that "caused an employee to violate another's constitutional rights." ***Id. at 2944.*** A plaintiff must also "connect the policy to the municipality, and

`

[] show that [the] particular injury was incurred due to the execution of that policy." *Id.* (citing *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 404 (6th Cir. 2010)).

Thus, reasonable discovery was and is mandatory. *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994) ("Yet we nevertheless conclude that summary judgment should not have been awarded until the plaintiffs were allowed some opportunity for discovery… In the instant case, we find that the grant of summary judgment, absent any opportunity for discovery, is such a misuse [of discretion]."); *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("Typically, when the parties have no opportunity for discovery… and ruling on a summary judgment motion is likely to be an abuse of discretion."). *Vance By & Through Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) ("Most significant to the conclusion we reach is the fact that no discovery was conducted before the motion for summary judgment was filed and decided."). The District Court erred in denying leave to conduct reasonable discovery in this case, **Opinion, RE 97, PageID # 2969,** that never saw a single Rule 16 conference or even

`

an initial case management order. Upon remand, the opportunity for discovery should be required.

## RELIEF REQUESTED

This Court is requested to vacate and reverse the District Court's order that refused discovery; that denied summary judgment in favor of Plaintiffs on the Fifth Amendment and replevin claims; and that caused dismissal of the challenged remaining claims (with the limited narrow exceptions of the Second Amendment and Fifth Amendment claims against Sheriff Federspiel solely in his personal capacity based on qualified immunity) and remand for further proceedings.

Date: May 28, 2024

s/ Philip L. Ellison
PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

THOMAS J. LAMBERT
THOMAS J. LAMBERT, PLC
PO Box 144
Jamestown, MI 49427
(616) 275-2976
tlambert@tjlplc.com

*Attorneys for Appellants*

`

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This brief has been prepared in proportional typeface using Century School Book 14-point font. The relevant portion of the brief, including headers and footnotes, contains 11,735 words according to the Word Count feature in the Microsoft Word program, being less than 13,000 words.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: May 28, 2024                s/ Philip L. Ellison
                                                     PHILIP L. ELLISON
                                                     OUTSIDE LEGAL COUNSEL PLC
                                                     PO Box 107
                                                     Hemlock, MI 48626
                                                     (989) 642-0055
                                                     pellison@olcplc.com

                                                     Attorney for Appellants

`

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: May 28, 2024

s/ Philip L. Ellison
PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Appellants

`

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| RE. | PageID Range | Description of the Document |
|---|---|---|
| 10-14 | #478-758 | Sheriff's Office Brief |
| 11-15 | #1135-1144 | 10th Cir. Ct. Op. & Order |
| 11-24 | #1252 | 70th Dist. Ct. Summary Disposition Order |
| 13-2 | #1363-1371 | Police Report |
| 13-3 | #1372 | Discharge Order |
| 13-4 | #1373-1375 | Criminal Court Record (*Heinrich*) |
| 13-5 | #1376-1378 | Emails |
| 13-6 | #1379-1380 | Novak Declaration |
| 13-7 | #1381-1382 | Wenzel Declaration |
| 13-8 | #1383-1396 | Property Room Records |
| 13-11 | #1409-1416 | Motion |
| 32-12 | #1974-1975 | Heinrich Declaration |
| 51 | #2244-2252 | Response to Order to Show Cause |
| 57 | #2332-2346 | Defendant's Responding Brief |
| 62 | #2415-2431 | Order |
| 67-6 | #2506 | Novak iChat Report |
| 67-7 | #2507 | Novak iChat Report |
| 67-8 | #2508-2553 | 70th District Court Transcript |
| 78 | #2616-2619 | Stipulated Order |
| 79 | #2628-2632 | First Amended Complaint |
| 82 | #2708-2733 | Plaintiffs' Mt. for Partial Summary Judgment |
| 83 | #2734-2741 | Plaintiffs' Motion for Discovery |
| 90 | #2815-2844 | Defendant's Mt. for Summary Judgment |
| 97 | #2931-2969 | Opinion and Order |
| 98 | #2970 | Judgment |
| 99 | #2971 | Notice of Appeal |